**MODIFY and AFFIRM; and Opinion Filed May 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00908-CR

**VALENTIN SANCHEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Kaufman County, Texas**
**Trial Court Cause No. 31940-CC2**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Valentin Sanchez appeals from his conviction for felony driving while intoxicated. He raises eight issues on appeal: (1) the evidence is insufficient to show that he was the driver of the vehicle at the time of the accident; (2) the trial court erred by admitting the 911 recording and the video from the patrol car; (3) he was denied his right to confrontation; (4) the trial court erred by allowing the State's expert to testify to matters outside his expertise; (5) the trial court erred by admitting statements he made before he was given *Miranda* warnings; (6) the trial court erred by overruling his *Batson* challenge; (7) the trial court erred by allowing the State to ask leading questions; and (8) the trial court abused its discretion by allowing the State to refer to hearsay during its opening statement. We modify the trial court's judgment and affirm as modified. Because the issues are settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Appellant drove his pickup truck into the back of Kenrick Armstrong's vehicle as Armstrong was stopped at a traffic light in Terrell. Appellant was unable to produce identification or insurance, and neither he nor Armstrong had a mobile phone to call police. Appellant agreed to follow Armstrong to a friend's house so Armstrong could borrow a mobile phone to call his mom. It is unclear what happened after they arrived at Armstrong's friend's house, but Armstrong ended up following the truck, now being driven by a female who was with appellant. While Armstrong was following the truck, he called 911 on his friend's phone. He told the 911 call taker that he was "just involved in an accident," they had left the scene to get a phone to call his mom, he was unable to get any identification or insurance information from the driver who hit him, and the person did not appear to be stopping. Armstrong described his location to 911 and officers were dispatched to find them. The officers found the vehicles while Armstrong was still talking to 911. The officers turned on their emergency lights, and the female driving appellant's truck and Armstrong pulled over to the shoulder of the road.

One of the police officers parked behind appellant's truck and the other officer parked behind Armstrong's car. The police car video cameras recorded the interactions between the officers and appellant, the female driver, and Armstrong. Appellant immediately exited from the passenger side of the truck. One of the officers told appellant to come to the back of the truck and sit on the hood of his patrol car. The other officer approached the female driver of the truck and told her to walk to the back of the truck. One of the officers said to the female, "Did you just hit somebody?" The female said, "No, he was the one . . ." and pointed at appellant. She told the officers that appellant "was the one that hit the car." Appellant agreed with her. Both officers, almost simultaneously, asked appellant, "You were driving?" And appellant looked at one officer, and then the other, nodding his head up and down the entire time. Armstrong also

told one of the officers that appellant was driving when the accident occurred, and that he saw appellant and the female switch places in the truck.

The officers ran a check on the female and arrested her for an outstanding warrant. Appellant told the officers he had about a "six-pack" and, after failing or refusing to perform field sobriety tests, was arrested for driving while intoxicated. He voluntarily consented to a blood draw, which revealed a blood alcohol level of .232.

The State's evidence included the 911 recording and the videos from the cameras in the patrol cars. Appellant stipulated to two prior convictions for driving while intoxicated. The jury found appellant guilty, and appellant elected the court to assess punishment. The court sentenced appellant to four years' incarceration, suspended the imposition of the sentence and placed appellant on community supervision for four years, ordered him to pay a $1,000 fine, and ordered him, among other things, to serve 180 days in jail as a condition of community supervision.

**ISSUE ONE**
**SUFFICIENCY OF THE EVIDENCE**

In issue one, appellant argues that the evidence is insufficient to show he was the driver of the vehicle at the time of the accident and the State did not prove a "temporal link" between his intoxication and driving to support the conviction.

**Standard of Review and Applicable Law**

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. If the evidence is

conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2014). If it is shown that the person has two prior convictions for driving while intoxicated, the primary offense is elevated to a third degree felony. *Id.* § 49.09(b)(2).

**Analysis**

When the police conducted the traffic stop, appellant was a passenger in the truck and the female with him was in the driver's seat. She told the police that appellant had been driving earlier and was the one who hit Armstrong's car. In the patrol car video, appellant can be heard agreeing with her and can be seen nodding his head up and down in agreement. The officers also testified that appellant admitted to driving at the time of the accident on many occasions during their encounter.

Appellant also argues that there "must be a 'temporal link' between the defendant's intoxication and the defendant's driving" and argues that because 911 was not called immediately after the accident, there is no evidence of the amount of time that passed between the accident and the time the police arrived. We disagree.

The 911 recording began at 7:50 p.m.; Armstrong immediately told the 911 call taker that he was "just involved in an accident." He explained to the call taker that someone had hit the back of his car and he referred to the driver as "the guy that was drunk" and said the female with the guy driving "said he had been drinking . . . ." Armstrong also told the 911 call taker that they left the scene of the accident to go to Armstrong's friend's house to get a phone to call his mom.

–4–

He told 911 "my friend lived around the corner." The jury could have inferred from this statement that it took only moments to arrive at the friend's house.

Additionally, the State's expert witness testified that in his opinion appellant was intoxicated at the time he hit Armstrong's vehicle. He based his opinion on the probability that a person of appellant's size who had a blood alcohol level of .232 at 9:20 p.m. could have had a blood alcohol level under .08 a couple of hours before. He said the probability was "like somebody winning the lottery." He said the person would have had to drink "about eight beers, nine beers, immediately . . . at the time of the stop or a minute before" and that it was "very improbable."

We conclude that the evidence was sufficient to establish that appellant operated the vehicle and that there was a "temporal link" between his intoxication and operation of the vehicle. *See Kuciemba*, 310 S.W.3d at 462. We resolve issue one against appellant.

### ISSUES TWO AND FIVE
### ADMISSIBILITY OF 911 RECORDING AND PATROL CAR VIDEO

In issue two, appellant argues that the trial court erred by admitting the 911 recording and the video from the patrol car because they contained hearsay and the declarants were unavailable for cross-examination. In issue five, appellant argues that it was error to admit the video because he was not given *Miranda* warnings.

### Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Id.*

### 911 Recording

Appellant concedes in his appellate briefing that portions of the 911 recording were admissible under the present-sense-impression exception to the hearsay rule. *See* TEX. R. EVID. 803(1). But he contends that the portion of the 911 recording "describing a minor accident earlier when the appellant was the driver" does not fall within this exception to hearsay because "[w]e have no idea how long after this alleged accident at the stop light that the other driver made the 911 call."

When an exhibit contains both admissible and inadmissible evidence, the objecting party must specifically point out to the trial court the portion of the exhibit that the party contends is inadmissible. *Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.) (citing *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009)). But here, appellant objected to the entire 911 recording and did not specifically point out to the trial court only the objectionable portion. Consequently, we conclude that the trial court did not abuse its discretion by admitting the 911 recording. *See id*. We resolve this subpart of issue two against appellant.

### Patrol Car Video

Appellant does not identify the specific statements on the video that he is complaining about, but he argues that the female who was riding in the truck with him was not available at trial for him to cross-examine, so we presume her statements are the subject of this issue on appeal. Appellant argues that the video was not admissible under the present-sense-impression exception to hearsay. We do not need to decide that issue, however, because at the time the State offered this video into evidence, one of the police officers had already testified about what the female said. And although appellant objected to the officer's testimony, he does not complain on appeal about the officer's testimony. Consequently, we conclude that the trial court did not abuse its discretion by admitting the video. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim.

App. 1998) (even if admission of evidence improper, not reversible error if same facts were admitted by other evidence not challenged). We resolve this subpart of issue two against appellant.

In issue five, appellant argues that it was error to admit the patrol car video because any statements he made during the police encounter were a violation of his "right to avoid self-incrimination" and the police questioned him without giving him any *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 467–68 (1966). He contends that "[a]udio tracks from DWI videotapes should be suppressed when the police conduct expressly or by implication calls for a testimonial response not normally incident to arrest." He also complains about the officers' failure to provide a Spanish-speaking officer when they questioned him and that the officers "intentionally took advantage of the appellant's intoxication, lack of education, and poor understanding of English to extract a statement that could be used as evidence of an essential element."

Appellant does not identify any particular questions or statements on the video about which he complains, and he does not cite the record showing he made these complaints to the trial court, filed a motion to suppress, or requested a jury instruction under article 38.23. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005) (statute authorizing jury instruction regarding evidence that may have been obtained in violation of the law). Consequently, we conclude that appellant has not shown that the trial court abused its discretion. We resolve issue five against appellant.

## ISSUE THREE
### DENIAL OF RIGHT TO CONFRONT WITNESSES

In issue three, appellant argues that he was denied his Sixth Amendment right to confront his accusers. He does not refer specifically to a particular accuser, but he cites the police officer's testimony about statements made by the female who was in the truck with him and by

Armstrong, the person whose car he hit. It is undisputed that the female was not present for trial because she could not be located and that Armstrong had passed away before trial due to an unrelated medical condition.

The record shows that the trial court allowed the officer to testify about the statements the female made at the scene under the excited-utterance exception to the hearsay rule. TEX. R. EVID. 803(2). Under this exception, whether the declarant is available to testify at trial is immaterial. *Id.* Appellant does not explain on appeal why the trial court's ruling was erroneous or how the ruling denied him the right to confront this witness.

With regard to appellant's complaint about statements made by Armstrong, the record shows that the State asked the officer whether "he received any corroborating information in his investigation that led him to determine that [appellant] had been the driver" at the time of the accident. Appellant objected on confrontation grounds, and the State argued that the evidence was not "offered for the truth, but for another purpose, for the officer's notice." Appellant does not explain why the trial court's ruling was erroneous in light of the State's proffer. Even if it was error to admit this testimony, however, it was harmless because other evidence, including appellant's own admissions, showed he was driving the truck at the time of the accident.

We resolve issue three against appellant.

### ISSUE FOUR
### ADMISSIBILITY OF EXPERT OPINION

In issue four, appellant argues that the trial court abused its discretion by allowing the State's expert witness to testify outside the scope of his expertise. The State asked the expert, a forensic scientist employed by the Texas Department of Public Safety in the Garland Crime Laboratory, "How quickly does the human body absorb alcohol?" Appellant objected that the question called for an opinion for which the witness had not been qualified to answer. Prior to offering the expert's opinion, however, the State asked the witness about his training in the area

of "physical effects of alcohol upon a human body[.]" The witness testified that he underwent training involving "heavy reading of journal articles about the effects of alcohol on the body," attended conferences and seminars throughout his 16 years at DPS concerning "the effects of alcohol on the body," and attended a "week-long course just on the pharmacology and toxicology of alcohol in blood" at Indiana University.

Although appellant cites authority explaining the factors a trial court must consider before admitting expert testimony, he does not apply that authority to the specific facts of this case. *See Vela v. State*, 209 S.W.3d 128, 130–31 (Tex. Crim. App. 2006). And he does not explain why the foundation laid by the State was inadequate to show that the witness had expertise about the effects of alcohol on the body. We conclude that the trial court did not abuse its discretion by admitting the expert's opinion. We resolve issue four against appellant.

## ISSUE SIX
### *BATSON* CHALLENGE

In issue six, appellant argues that the trial court "failed to uphold [his] right to a fair jury by allowing the prosecutor to strike all potential Hispanic jurors[.]" Appellant states that he raised a *Batson* challenge below and the State responded that "there were Hispanics on the voire [sic] dire panel they did not use preemptory challenges on." *See Batson v. Kentucky*, 476 U.S. 79, 94–98 (1986). On appeal, appellant contends that those Hispanic jurors "were so far back that they were not in the legitimate 'strike zone.'" But he does not identify any particular jurors about which he complains, he does not cite to the record where the trial court heard his *Batson* challenge, and he does not provide any analysis of the factors we must consider in analyzing a *Batson* complaint on appeal. Consequently, we resolve issue six against appellant.

**ISSUE SEVEN**
**ADMISSIBILITY OF LEADING QUESTIONS**

In issue seven, appellant complains that the trial court allowed the prosecutor to ask "numerous leading questions of key witnesses" during its direct examination of witnesses, specifically two "veteran law enforcement officers trained to testify in court," even though the State had not asked for permission to treat the witnesses as hostile. Appellant cites one record reference in which the State was questioning the police officer about the female's demeanor and emotional state as she exited the truck:

Q.     Was her voice quiet or was it –

[DEFENSE ATTORNEY]: Objection to leading the witness, Judge.

THE COURT: Overrule.  Overrule.

Q.     [STATE'S ATTORNEY] Was her voice quiet or elevated?

Appellant argues that the trial court overruled his objection "with no explanation and no questions of the prosecutor."  He contends that the "questions amounted to the prosecutor testifying to get around the rules of evidence on hearsay and the confrontation clause of the United States Constitution."  We disagree.

The only question cited by appellant on appeal was an incomplete question, making his objection premature.  Once the State completed the question, it was clear that the question was not leading because it did not suggest an answer or put words in the witness's mouth.  *See Newsome v. State*, 829 S.W.2d 260, 269 (Tex. App.—Dallas 1992, pet. ref'd) (leading question is one that "suggests which answer . . . is desired, or when it puts into the witness's mouth words to be echoed back").  We conclude that the trial court did not abuse its discretion by overruling appellant's objection to this question.  We resolve issue seven against appellant.

## ISSUE EIGHT
### PROSECUTOR'S OPENING STATEMENT

In issue eight, appellant argues that the trial court abused its discretion by allowing the State to refer to hearsay during its opening statement:

> What the evidence will show is that a young man named Kenrick Armstrong is stopped in his vehicle at a red light at 205 and West Moore Avenue outside of the Wal-Mart in Terrell when all of a sudden, he's rear-ended by the defendant in the defendant's pickup truck. And the evidence will show that after that crash, that Mr. Armstrong and the defendant began to speak on the side of the road. The evidence will show that –

Appellant objected to "statements about what witnesses may or may not have spoken, Judge, as hearsay." The trial court overruled the objection, stating, "I'll just repeat my instruction. This is not evidence. It's just an outline to help the jury understand what they expect to prove."

Appellant contends on appeal that it was error to overrule his objection because the hearsay statements were never admitted during the trial. But "[a] preliminary statement of what the State expects to be proved is proper," even if the State does not later introduce evidence to support it. *Marini v. State*, 593 S.W.2d 709, 715 (Tex. Crim. App. [Panel Op.] 1980); TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (West 2007). Consequently, we conclude that the trial court did not abuse its discretion by overruling appellant's objection. We resolve issue eight against appellant.

### CLERICAL ERRORS IN JUDGMENT

The judgment in this case spells appellant's first name "Valetin." The indictment and other significant documents in this case spell appellant's first name "Valentin." Additionally, the judgment reflects that appellant pleaded true to one enhancement paragraph and that there was no second paragraph. However, the indictment charged appellant with felony driving while intoxicated, alleging two prior offenses for driving while intoxicated. Appellant signed a

stipulation and judicial confession to both prior offenses, and the State offered the exhibit into evidence during guilt-innocence without objection. The trial court instructed the jury that appellant "has entered into a stipulation that it is true that he was legally convicted of two prior driving while intoxicated offenses. Based on the stipulation, you are further instructed that this offense is a felony." The jury found appellant guilty "of the felony offense of Driving While Intoxicated as charged in the indictment."

We have the power to modify a judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to correct the spelling of appellant's first name to "Valentin," and we modify the judgment to reflect that appellant pleaded "true" to a second enhancement paragraph and that the second enhancement paragraph was found "true."

## CONCLUSION

We affirm the trial court's judgment as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140908F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VALENTIN SANCHEZ, Appellant

No. 05-14-00908-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Kaufman County, Texas
Trial Court Cause No. 31940-CC2.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The spelling of appellant Valentin Sanchez's first name is changed to "Valentin."

The "N/A" under "Plea to 2nd Enhancement/Habitual Paragraph" is changed to "True," and the "N/A" under "Findings on 2nd Enhancement/Habitual Paragraph" is changed to "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 20th day of May, 2015.