

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00310-CR

Julio C. **RIVERON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR2932
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by: Beth Watkins, Justice

Sitting: Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 10, 2024

AFFIRMED

Appellant Julio C. Riveron appeals his conviction for aggravated assault with a deadly weapon on sufficiency and evidentiary grounds. We affirm.

### BACKGROUND

This road rage case started with Riveron acting bizarrely at his apartment complex. Two neighbors called 9-1-1 to report his behavior. Both callers provided their own apartment addresses as well as Riveron's address. First, a woman who lived across from Riveron called in a "neighborhood dispute" that she said the apartment complex did not "care about." She told the

operator that "Julio" had been outside "screaming at somebody that's apparently out in the parking lot and he's been doing this for about an hour and half." She said she had opened her door and asked, "Could y'all keep your business on the inside?" In response to questions from the operator, she described Julio as "Cuban," with shorts on but no shirt, and "drunk or something." She did not see any weapons and did not know if anyone needed emergency medical services. At the end of the call, she stated that the officers did not need to deal with her, they needed to deal with him because "this screaming and hollering crap has got to go."

The other 9-1-1 caller, who lived next to Riveron, told the operator his neighbor was "walking around outside crazy with a sword; I think he's high." The caller said that as he walked into his own apartment, his neighbor "was just standing at his porch with a sword, like, yelling at things." He said another neighbor had told him to be quiet and he instead went to her door and told her to "shut the f--- up." The operator asked this second caller to describe the neighbor, and the caller described him as "Hispanic," with shorts on but no shirt, and "definitely on drugs." When the dispatcher told the caller that help was already on the way, the caller stated, "can you please not tell him I called the cops on him. I don't want him acting crazy if he stays here."

A few minutes later, Riveron was driving his truck north on Midcrown and stopped at a red light at the intersection of Eisenhauer, about one fourth of a mile from his apartment complex. Larry Fourcha was driving a rental car and stopped behind Riveron. Fourcha noticed Riveron fidgeting. Riveron left his truck and walked towards Fourcha "doing racial slurs and cussing." He was shirtless and Fourcha thought he was drunk. He asked Fourcha, "[W]hat the f--- did you call the police on me for?" Fourcha "got his attention and told him the light is green, let's go." Riveron re-entered his truck. Both men turned left on Eisenhauer. Riveron abruptly stopped his truck at an angle across both westbound lanes, pinning in Fourcha and causing him to slam on his brakes. Both men left their vehicles. According to Fourcha, Riveron took a rake from his truck and

approached him. Fourcha "ran up on him and took it away." Riveron then took a machete out of his truck.[1]

Riveron charged Fourcha, "very visibly trying to swing and actually hit [me]. When I ran around the car, he realized he couldn't get me and he hit the back of -- the trunk of the car." He said, "I'm going to kill you." Fourcha was angry because the "car did not belong to [him]." Fourcha hit Riveron's truck with the palm of his hand. Both men re-entered their vehicles after "a couple of witnesses said to stop as they were driving by." Fourcha, "calm enough to call the police," called 9-1-1 and the dispatcher told him "to get [Riveron] to follow [him] to the little Eisenhauer market[.]" The market was less than one fourth of a mile away, so he drove to the market and parked. Riveron followed him, left his truck, and walked towards him as an officer pulled in. The officer intervened, preventing Riveron from getting any closer to Fourcha.

Riveron was arrested on an outstanding warrant. Detective Arthur Bottigheri read Riveron his rights and spoke to Riveron in the back of his patrol car. Bottigheri found Riveron "hard to understand" and apparently "under the influence of some kind of intoxicant. Riveron told his side of the story, which was captured on Bottigheri's body camera. Riveron said Fourcha started the argument and took a rake[2] from the back of his truck. He then grabbed the machete to defend himself. He said he did not tell Fourcha that he was going to kill him. He also said that he saw Fourcha put the rake in his car.

Fourcha told officers that he dropped the rake on the sidewalk before driving to the market. Officers found the machete in the back of the cab area of Riveron's truck, but never found the rake.

---

[1] About this time, a third 9-1-1 call came in. A female caller stated two men at the intersection of Midcrown and Eisenhauer were getting ready to fight. She reported that one of the men had a long knife and the other had a long stick.

[2] Riveron described Fourcha as wielding a stick but later described the stick as a tool that you use after you cut the grass. Because this description appears to refer to the rake Fourcha also referenced, we use that description here.

The machete had an 18-inch blade and a 6-inch handle. They found damage to Fourcha's car "[t]hat looked like a dent that was made by a long object."

A grand jury indicted Riveron on a charge of aggravated assault with a deadly weapon. At trial, the jury heard from Fourcha, saw the video of Riveron's questioning, and listened to recordings of the two 9-1-1 calls. The jury rejected Riveron's claim of self-defense and found him guilty of the offense. The trial court sentenced him to 8 years. Riveron appeals.

**ANALYSIS**

*Sufficiency*

Riveron argues that the evidence did not show that he threatened Fourcha with a machete and that, even if he did, he was defending himself from the threat Fourcha caused by taking the rake from him and threatening him.

*Applicable Law and Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against

the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

In resolving the sufficiency of the evidence in a case in which self-defense is raised, we also determine whether the jury "could have found beyond a reasonable doubt against [the defendant] on the self-defense issue." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). "[T]he defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

*Application*

Riveron first argues that the State failed to prove that he intentionally and knowingly threatened imminent bodily injury to Fourcha by chasing him and swinging the machete at him and threatening to kill him. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. But, as discussed above, Fourcha testified that Riveron:

- "got out of the car and chased me";

- "chased me around the car with a machete";

- "swung the machete" but "he was not able to hit me because I moved so I would not get hit";

- "wanted to kill me and said 'I'm going to kill you'";

- "started saying, I will f------ kill you, and called me a n----."

The State showed the jury the machete with an 18-inch blade, and photographs of the damage to the trunk of Fourcha's car. From this evidence, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. 319; *Matlock*, 392 S.W.3d at 667; TEX. PENAL CODE §§ 22.01, 22.02.

Riveron next argues that even if he did threaten Fourcha with the machete, no rational trier of fact could have found he did not act in self-defense—specifically, that no reasonable trier of fact could have concluded that he did not reasonably believe Fourcha was using or attempting to use unlawful deadly force against him and that the use of deadly force was immediately necessary to protect himself against that unlawful use or attempt. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32. Riveron's self-defense claim depends on the credibility of his version of the events: that Fourcha, who was bigger than him, first threatened him with the rake; that he only picked up the machete to defend himself; that he did not chase Fourcha; and that he did not threaten to kill Fourcha. But the jury was entitled to credit Fourcha's version of events and discredit Riveron's theory. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (if record supports conflicting inferences, we presume factfinder resolved conflicts in favor of its verdict and defer to that resolution). And the jury could have rationally credited Fourcha's version over Riveron's. *Nisbett*, 552 S.W.3d at 262. The two neighbors who called 9-1-1, Fourcha, and Bottigheri all thought Riveron was drunk or high. And the second 9-1-1 caller said Riveron was carrying a sword before he ever crossed Fourcha's path. Viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found against Riveron on the self-defense issue. *Saxton*, 804 S.W.2d at 914; *Braughton*, 569 S.W.3d at 609; TEX. PENAL CODE §§ 9.31, 9.32. We overrule Riveron's sufficiency complaints.

### *Admission of the 9-1-1 Recordings*

Riveron next argues the trial court erred in admitting the recordings of the two 9-1-1 calls over his confrontation and hearsay objections.

1. Confrontation

Riveron first contends that the admission of the two 9-1-1 calls violated his rights under the Confrontation Clause because the circumstances objectively indicated that there was no

ongoing emergency and the primary purpose of the calls was to establish past events potentially relevant to later criminal prosecution.

*Applicable Law and Standard of Review*

The Sixth Amendment "prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (internal quotation marks omitted). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

The primary-purpose inquiry requires a court to consider all relevant circumstances. *Michigan v. Bryant*, 562 U.S. 344, 369 (2011). These may include whether an ongoing emergency exists, whether questioning is to determine past facts or an ongoing event, whether the interrogation is formal or informal, and reliability of the statements as informed by the rules of evidence. *Bryant*, 562 U.S. at 363; *Clark*, 576 U.S. at 244–45. We look "to the contents of both the questions and the answers" to ascertain the primary purpose. *Bryant*, 562 U.S. at 367–68. "[S]tatements to individuals who are not law enforcement officers could conceivably raise confrontation concerns" but "such statements are much less likely to be testimonial than statements to law enforcement officers." *Clark*, 576 U.S. at 246.

"In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Id*. at 245 (internal quotation and alteration marks omitted). "Where no such primary

purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 562 U.S. at 359. We review de novo a constitutional legal ruling on whether a statement is testimonial. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

*Application*

In *Davis*, the United States Supreme Court reviewed a similar argument about the admissibility of statements made in response to a 9-1-1 operator's questions. 547 U.S. at 817–18. There, the Court recognized, "[i]f 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers." *Id* at 823 n.2. It went on to find that the interrogation that took place early in the 9-1-1 call did not produce testimonial statements; instead, the caller sought "help against bona fide physical threat." *Id*. at 827–28. The same can be said for the second 9-1-1 caller in this case. That caller saw his neighbor with a "sword" and was scared enough to ask the operator to not tell Riveron he had called 9-1-1. The operator asked questions aimed at gaining the information needed to resolve "the exigency of the moment" to determine "what is happening," rather than "what happened." *Id*. at 828, 830. We therefore conclude that the second 9-1-1 call did not produce testimonial statements. *Clark*, 576 U.S. at 246; *Bryant*, 562 U.S. at 359.

Although the first caller did not seek "help against bona fide physical threat," she sought help for an ongoing disturbance of the peace. She stated her neighbor had been and was screaming at somebody who was in the parking lot, and she wanted officers to do something about it because her apartment complex would not. Again, the operator asked questions aimed at gaining the information needed to address "the exigency of the moment," to preserve the peace. *Davis*, 547 U.S. at 828, 830; *see* TEX. CODE CRIM. PROC. ANN. art. 2.13(a) ("It is the duty of every peace officer to preserve the peace within the officer's jurisdiction."). The primary purpose of the call

was to obtain police assistance to address an escalating situation. Like the second 9-1-1 call, we conclude the first 9-1-1 call did not produce testimonial statements. *Clark*, 576 U.S. at 246; *Bryant*, 562 U.S. at 359. Because neither of the recordings of the 9-1-1 calls played for the jury produced testimonial statements, we overrule Riveron's confrontation complaints. *See Ruth v. State*, 167 S.W.3d 560, 569 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

2.      Hearsay

Riveron next argues the 9-1-1 calls were inadmissible hearsay that met neither the present sense impression nor the excited utterance exception.

*Applicable Law and Standard of Review*

Hearsay statements are not admissible unless they fall within a recognized exception to the hearsay rule. TEX. R. EVID. 802. The present sense impression exception applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." TEX. R. EVID. 803(1). The excited utterance exception applies to "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

*Application*

The trial court did not abuse its discretion in admitting the 9-1-1 recordings over Riveron's hearsay objections under the present sense impression or excited utterance exceptions. As set out above, both callers reported both contemporaneous and near-past events. Riveron had been yelling and wielding a sword before his neighbors called 9-1-1, and he was still yelling and wielding a

sword while his neighbors were speaking with the 9-1-1 operators. TEX. R. EVID. 803(1); *see Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.). Both calls were dominated by the stress of excitement of the events: the first call was dominated by frustration or exasperation; the second call was dominated by fear. TEX. R. EVID. 803(2); *see Neal v. State*, 186 S.W.3d 690, 693–94 (Tex. App.—Dallas 2006, no pet.). Neither caller offered a calculated narration—both expressed a need for police to find the neighbor creating the disturbances and threats, and the 9-1-1 operators asked questions to allow officers to quickly find and recognize Riveron. *Cf. Fischer v. State*, 252 S.W.3d 375, 384–85 (Tex. Crim. App. 2008) (distinguishing "'non-reflective' street-corner statements of objective [civilian] observers" from "speaking offense report[s]" made by police). Because the trial court did not abuse its discretion in admitting the 9-1-1 recordings under the Rule 803 exceptions, we overrule Riveron's hearsay arguments. *Zuliani*, 97 S.W.3d at 595; *McCarty*, 257 S.W.3d at 239. Having already rejected Riveron's confrontation arguments, we overrule his evidentiary complaint in its entirety.

## CONCLUSION

We affirm the judgment of the trial court.

Beth Watkins, Justice

DO NOT PUBLISH