

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00374-CR

_____

DAVID C. MORGAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1532390D

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant David C. Morgan appeals his conviction for driving while intoxicated and felony repetition. In five issues, Morgan argues that the trial court abused its discretion by allowing (1) the State's fingerprint expert to testify, (2) the State to introduce two charging instruments related to Morgan's previous convictions for DWI, (3) his cross-examination of a key witness to be limited, (4) the admission of 911 calls, and (5) the introduction of certain medical records. We affirm.

### II. BACKGROUND

#### A. The Collision and Arrest

Mailman Dang Dan Do was delivering mail on February 12, 2018, at roughly 8:00 p.m., when Morgan struck Do's mail van with his SUV. The collision caused Do's van to strike Do, and he sustained injuries to his head, neck, back, knee, leg, foot, and ankles. A nearby resident found Do in the street lying on the ground bleeding and incoherent. The resident also saw Morgan, who was outside his wrecked SUV "yelling and cussing" and "pouring out something." The resident then called 911 and learned that emergency personnel had already been dispatched.

When paramedic Kathleen Leikam arrived at the crash scene, she found Morgan sitting in the passenger side of his vehicle shuffling through the glove compartment and the front of his SUV. Leikam testified at trial that Morgan seemed annoyed that she was there asking him questions and that Morgan wanted to go

2

home. According to Leikam, Morgan's body and breath smelled of alcohol, and he admitted having consumed alcohol before driving.

Fort Worth police officer Dusty Dwyer arrived on scene, observed the "highly damaged" SUV and mail van, and spoke with Morgan. By Dwyer's account, Morgan had trouble answering questions and maintaining his balance. Morgan was also severely slurring his speech, and he had bloodshot, watery eyes. Dwyer said that he smelled the odor of alcohol coming from Morgan. Based on his observations, Dwyer determined that Morgan was intoxicated.

Officer Robert Hill of the Fort Worth Police Department also investigated the scene. When he arrived, Hill saw a beer bottle with some contents still in it on the passenger-side floorboard of Morgan's SUV, and the floor mat was damp.

Dwyer arrested Morgan and transported him to jail, where Morgan agreed to provide a breath sample. The intoxilyzer operator testified that, based on his observations, Morgan was legally intoxicated. Morgan's breath-test results showed his blood alcohol level to be 0.232 and 0.227.

## B. The State's Fingerprint Expert

At trial, the State called Corporal Homero Carnero of the Tarrant County Sheriff's Office error resolution section as its expert fingerprint witness for the purpose of validating two prior convictions—State's Exhibits One and Two. Carnero said that his duties at the sheriff's office included "[m]aintaining the accuracy of the crime records [] of Tarrant County, consolidation to duplicate records, name changes,

3

ID misuse investigations, everything via fingerprint analysis." His duties also required him to compare known fingerprints with unknown fingerprints. According to Carnero, he had worked for the error resolution section for a year and three months. Prior to that, Carnero had compared fingerprints at booking for the identification section.

Regarding his education and training, Carnero said that he has a bachelor's degree in criminal justice and that two years prior to trial he had successfully completed a forty-hour fingerprint identification course. He also stated that he had attended a three-day seminar the previous year regarding how to correctly testify as a fingerprint examiner, but he agreed that the course did not entail learning fingerprint analysis. Carnero averred that he did not have any certifications in fingerprint analysis and that although he had read studies since his forty-hour training, he had not done so recently. Carnero did, however, confirm that he had previously testified "many" times in court as a fingerprint expert. Prior to testifying specifically about Morgan, defense counsel took Carnero on voir dire and then objected that Carnero had not met the qualifications of an expert witness. The trial court overruled the objection, and Carnero then testified regarding what he had learned about Morgan's prior convictions.

Carnero testified that he had recently taken Morgan's fingerprints so that he could compare them with known fingerprints "at the Tarrant County jail and known

priors." Using a "tenprint"[1] card from the sheriff's office, Carnero compared the fingerprints that he had taken from Morgan with the fingerprints on the tenprint card and determined that both sets of fingerprints matched. By Carnero's account, when he examined a 1996 judgment for DWI misdemeanor repetition (State's Exhibit 1), he determined that the fingerprint on State's Exhibit 1 was "not readable." Carnero was, however, still able to determine that State's Exhibit 1 contained a judgment regarding Morgan because he was able to match Morgan's name, date of birth, sex, race, and county ID number in the judgment to certified records from the Tarrant County jail. Carnero said that although he was able to match the fingerprint found on a 2002 judgment for DWI that the State introduced (State's Exhibit 2) to the fingerprints found on the tenprint card, he was not able to match the fingerprints that he had taken from Morgan to the print found on State's Exhibit 2.

## C. Prior DWI Judgments and Charging Instruments

During Carnero's time on the stand, the State sought to admit State's Exhibits 1 and 2, but Morgan lodged a hearsay objection. Specifically, Morgan objected that in addition to the judgments of conviction, the exhibits contained their related charging instruments. Morgan specifically stated that he was not objecting to

---

[1]Carnero explained to the jury that a tenprint card is a card that contains an "arrestee's identifying information, name, date of birth, sometimes they'll have the arrest on there, along with the roll prints, which are fingertip to fingertip each digit of each hand, and the bottom is just pat-down, and that happens during the booking process."

5

the judgments of conviction being admitted. The trial court overruled Morgan's objection and admitted State's Exhibits 1 and 2 for all purposes.

## D. Defense Counsel's Questioning of Do

Do testified at trial. During cross-examination, defense counsel began to question Do about whether he had filed for "workman's comp"[2] after the crash. The State objected. The trial court stated, "I'm going to let him answer the question asked, if he filed." Do answered that he had filed for workers' compensation. Defense counsel then asked Do whether he was currently receiving workers' compensation to which the State objected again. Defense counsel argued that because the State was seeking a deadly-weapon finding—Morgan's SUV—Do's receiving workers' compensation went "directly to the actual extent of his injuries and his motive for his testimony." The trial court allowed Do to answer the question, and Do acknowledged that he was receiving workers' compensation. Defense counsel then asked Do if he had ever previously filed for workers' compensation. The State objected once more, the trial court sustained the objection, and defense counsel stated that he had no further questions of Do.

## E. 911 Calls

The State called Jill Nesbitt, the custodian of records for the Fort Worth Police Department's communications section, for the purpose of authenticating a DVD

---

[2]Defense counsel referred to Do having filed for "workman's comp" multiple times in the record. We use the term "workers' compensation" throughout the remainder of this opinion. *See* Tex. Labor Code Ann. §§ 401.001 et seq.

6

(State's Exhibit 20) the State sought to admit that contained two recordings of 911 calls made after Morgan crashed his SUV into Do's mail van. Morgan objected that the calls were hearsay. The trial court overruled Morgan's objection and admitted State's Exhibit 20. The State did not seek to publish the 911 calls until after Nesbitt and two other witnesses had testified and during a fourth witness's testimony. At that time, Morgan objected:

> Your honor, we would renew our objection as to hearsay on the 911 call. And as far as the 911 call, that does not include this individual. We would object to it being played under -- it denies our right to confront the witness who is on it, it's a *Crawford*[3] violation, confrontation clause, and the predicate wasn't properly laid.

The trial court overruled the objection, and the State published State's Exhibit 20 for the jury. In one of the recordings, the caller described the accident and its immediate aftermath, including that Do was on the ground and in need of medical assistance.

## F. Morgan's Medical Records

The defense called Dr. Amy Gruszecki, a forensic pathologist, who testified about medical conditions that Morgan has that might explain his driving behavior, slurred speech, lack of balance, and bloodshot eyes on the night of the crash. Gruszecki also testified, from her review of the records, that Do's injuries from the crash were not severe.

---

[3] *See Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004).

Gruszecki stated that in preparation for trial she had reviewed more than 2,000 pages of Morgan's medical records. Prior to cross-examination, the State sought to introduce a DVD containing the 2,000 pages of Morgan's medical records (State's Exhibit 29). Morgan's attorney said, "Your Honor, no objection as to the set of records she actually reviewed. This, however, contains additional records on it that she did not review, so we would object to those." The trial court replied, "Well, you [prosecutor] can't go into those records that she did not review." After publishing State's Exhibit 29 for the jury, the State elicited testimony from Gruszecki where she described that in 2012 Morgan had been treated for "headache, depression, and alcohol intoxication" and diagnosed as an alcoholic. She also averred that a 2013 lab test showed that Morgan's blood alcohol level was 0.273.

## G. Conviction and Sentence

The jury found Morgan guilty of DWI and felony repetition. The jury also found that Morgan had used or exhibited his SUV as a deadly weapon and that he had caused Do serious bodily injury. After the punishment phase of trial, the jury assessed punishment at thirteen years' incarceration. The trial court rendered judgment accordingly, and this appeal followed.

## III. DISCUSSION

## A. The State's Fingerprint Expert

In his first issue, Morgan argues that Carnero "was not an expert witness under the law and his testimony should have been excluded." We disagree.

A person may be qualified to testify as an expert "by knowledge, skill, experience, training, or education." Tex. R. Evid. 702. Our qualification inquiry asks whether the witness has a sufficient background in a particular field and whether that background goes to the very matter on which he will give an opinion. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). We are to focus on whether the expert's background is "tailored to the specific area of expertise in which the expert desires to testify." *Id.* at 133. "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006).

In determining whether an abuse of discretion occurred, we look to the complexity of the expert's field, the conclusiveness of the opinion, and the dispositive nature of the testimony to the disputed issues. *Id.* at 528. The expert's qualifications are less important if the complexity, conclusiveness, and dispositive nature of the expert's opinion are low. *Id.* And the Texas Court of Criminal Appeals has explained that fingerprint comparison is not scientifically complex. *Id.*

Carnero testified that he had a bachelor's degree in criminal justice and that he had successfully completed a forty-hour fingerprint identification course. At the time of trial, Carnero had worked for the Tarrant County Sheriff's Office error resolution section for a year and three months. Carnero said that his main duty in the error resolution section was to compare fingerprints. Prior to that, Carnero had worked for

9

the identification section comparing fingerprints. And by Carnero's account, he had testified "many" times as an expert fingerprint witness. Carnero's qualifications are similar to the qualification of expert witnesses from a number of cases where reviewing courts have held that the trial court did not abuse its discretion by allowing the expert to testify. *Pender v. State*, No. 02-13-00400-CR, 2014 WL 1859110, at *4 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op., not designated for publication) (holding that fingerprint expert qualified where expert had worked in fingerprint comparison for almost five years, had taken over forty hours of courses in fingerprint analysis, and was "more than halfway through" the coursework for obtaining a master's degree in forensic science and toxicology); *Fiscal v. State*, Nos. 07-08-0193-CR, 07-08-0194-CR, 2009 WL 1393242, at *2 (Tex. App.—Amarillo May 19, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not err by allowing fingerprint expert to testify who had three years of experience comparing fingerprints, had taken a forty-hour course in fingerprint analysis, and was testifying in court for the first time); *Harrison v. State*, No. 2-02-339-CR, 2003 WL 21513618, at *2 (Tex. App.—Fort Worth July 3, 2003, no pet.) (mem. op., not designated for publication) (holding that witness was qualified to testify as fingerprint expert where State established that witness had been employed by police department for seventeen years and had forty hours of fingerprint training).

Morgan argues that because Carnero does not have a certification in fingerprint comparison and because Carnero was unable to match the fingerprints he took from

Morgan to the prints found on State's Exhibits 1 and 2, he was not qualified as a fingerprint expert. This court, however, has consistently held that certification or licensure is not a requirement for qualifying as an expert witness. *See Pender*, 2014 WL 1859110, at *4 (holding that certification was not a necessary requirement to qualify as a fingerprint expert); *Duran v. State*, 163 S.W.3d 253, 258 (Tex. App.—Fort Worth 2005, no pet.) ("Contrary to Appellant's contention, licensure, or certification in the particular discipline is not a *per se* requirement.").

Moreover, this court disagrees with Morgan's characterization that Carnero lacked the skill to compare fingerprints given that he could not match the fingerprints he had taken with the ones found on State's Exhibits 1 and 2. Indeed, Carnero testified that he was unable to match the fingerprint on State's Exhibit 1 because it was "not readable" and of poor quality. He also testified that he was able to match the fingerprint found on State's Exhibit 2 with Morgan's fingerprints that were on file in the Tarrant County Sheriff's Office.[4] We conclude that the trial court did not abuse its discretion by allowing Carnero to testify as an expert in fingerprint comparison. *See Pender*, 2014 WL 1859110, at *4. We overrule Morgan's first issue.

## B. The Introduction of Prior Charging Instruments

In his second issue, Morgan argues that the trial court abused its discretion by allowing the State to introduce the charging instruments related to the two judgments

---

[4]Carnero testified that he was able to match the judgment in State's Exhibit 1 with Morgan without matching fingerprints by using Morgan's name, birthdate, race, gender, and county ID.

the State offered as proof of Morgan's prior convictions for DWI. Like in the trial court, Morgan argues that these charging instruments contain inadmissible hearsay. We disagree.

In this case, the indictments were public records that "are not excluded by the rule against hearsay." Tex. R. Evid. 803(8). As such, the charging instruments were admissible over Morgan's hearsay objection. *See Interest of A.W.*, No. 02-19-00057-CV, 2019 WL 2455610, at *2 (Tex. App.—Fort Worth June 13, 2019, pet. denied) (mem. op.) (holding that indictments are public records admissible under Rule 803(8)); *Dotson v. State*, No. 2-03-463-CR, 2008 WL 2780663, at *2 (Tex. App.—Fort Worth July 17, 2008, no pet.) (mem. op., not designated for publication) (same). We overrule Morgan's second issue.

## C. The Trial Court's Limiting Morgan's Questioning of Do

In his third issue, Morgan argues that his Sixth Amendment right to confrontation was violated and that relevant evidence was excluded at trial when the trial court forbid his attorney from asking Do about previous workers' compensation claims. The State argues that Morgan has failed to preserve this issue for our review because he did not make a confrontation clause objection nor did he make an offer of proof at trial. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v.*

12

*State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000). To preserve a confrontation clause error, a party must object at the time the evidence is offered at trial. *Craven v. State*, 579 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Because Morgan failed to lodge a confrontation clause objection when Do was testifying, he has failed to preserve this issue for our review.

Moreover, to preserve error regarding the exclusion of evidence, the offering party must make an "offer of proof" conveying the substance of the proffered evidence. Tex. R. Evid. 103(a)(2); *see Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007). Because Morgan failed to make an offer of proof in the trial court, he has forfeited his complaint regarding the exclusion of evidence. We overrule Morgan's third issue.

## D. The Admission of 911 Calls

In his fourth issue, Morgan argues that the trial court allowed the State to play 911 calls for the jury without laying a proper predicate and that this "violates rules against hearsay, the Confrontation Clause, and *Crawford* . . . ." The State argues that Morgan has failed to preserve all but his hearsay objection because he did not lodge his Confrontation Clause, *Crawford*, or predicate objections until well after the DVD

13

containing the 911 calls (State's Exhibit 20) was admitted at trial. We agree with the State.

As noted above, to preserve a complaint for our review, a party must have (1) presented to the trial court a timely request, objection, or motion and (2) obtained a ruling. Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924; *Everitt*, 407 S.W.3d at 262–63. And a party must object as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 509–10 (Tex. Crim. App. 2016). "The standard set by our high court for the timely assertion of objections is both demanding and unforgiving." *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Lagrone v. State*, 942 S.W.2d 602, 617–18 (Tex. Crim. App. 1997)).

Here, when the trial court admitted State's Exhibit 20, Morgan objected only that the 911 calls contained hearsay. It was not until after multiple witnesses had testified that the State sought to publish the 911 calls for the jury. At that time, Morgan objected for the first time that playing the 911 calls was a violation of his confrontation clause rights, a *Crawford* violation, and a proper predicate had not been laid. Thus, Morgan has failed to preserve any objection except for his hearsay objection. *See Burt v. State*, 396 S.W.3d 574, 577–78 (Tex. Crim. App. 2013) ("An appellant fails to preserve error by failing to object when he had the opportunity . . . .").

14

As to Morgan's complaint that the 911 calls were inadmissible hearsay, we disagree that the trial court abused its discretion by allowing the recordings to be played. Generally, hearsay is inadmissible unless provided otherwise by a statute, the rules of evidence, or other rules prescribed under statutory authority. Tex. R. Evid. 802. But an exception to this rule against the admissibility of hearsay exists for statements that are present sense impressions. Tex. R. Evid. 803(1). A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.* Multiple Texas Courts of Appeals have held that 911 calls are admissible under the present sense impression exception to hearsay. *See Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.) ("The 911 recording includes statements by the caller that his mother was 'limping' and that she 'needs' an ambulance. These statements indicate the caller was describing events as they were happening and falls within the hearsay exception of present sense impression."); *see also Williams v. State*, No. 02-17-00012-CR, 2018 WL 547598, at *8 (Tex. App.—Fort Worth Jan. 25, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that 911 call was admissible under present sense impression exception to the hearsay rule); *Rodriguez v. State*, No. 07-14-00407-CR, 2016 WL 4254388, at *5 (Tex. App.—Amarillo Aug. 8, 2016, pet. ref'd) (same).

We have listened to the 911 calls, and the statements made by the callers were made immediately after the declarants observed Morgan crash his SUV into Do's mail van. One caller described Do as she observed him on the ground in need of medical

15

attention after the crash. Further, and to the extent that Morgan argues that the 911 calls contain both present sense impression statements but also non-present sense impression statements, a trial court does not abuse its discretion when it admits an exhibit in its entirety if the objecting party fails to request segregation of the admissible from the inadmissible. *Reyes*, 314 S.W.3d at 78. Here, Morgan objected only to the admission of State's Exhibit 20, but he did not segregate any statements made in the calls found on State's Exhibit 20. *See id.* ("Reyes objected to the entire recording and he did not request specific portions to be excluded. Because at least some statements in the recording appear to be a contemporaneous statement about an event the caller was witnessing, the trial court did not abuse its discretion by admitting the recording."). We overrule Morgan's fourth issue.

## E. The Admission of Medical Records

In his fifth issue, Morgan argues that the trial court erred by allowing the State to introduce medical records the State utilized when cross-examining Gruszecki about Morgan's alcoholism. Morgan argues that records pertaining to his "alcoholism and previous blood alcohol concentrations were irrelevant, not probative to the charge at hand, and were highly prejudicial to the jury." The State contends that Morgan did not preserve these complaints for our review. We again agree with the State.

In addition to the requirements of objecting and obtaining a ruling cited above, to preserve a complaint for appellate review, the complaint made on appeal must comport with the complaint made in the trial court, or the alleged error is forfeited.

16

*Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *see also* Tex. R. App. P. 33.1.

Here, Morgan did not lodge a relevancy, probative, or prejudicial objection to the admission of the complained-of medical records. The only objection that Morgan asserted in the trial court regarding his medical records was that the State not be allowed to question Gruszecki about the "additional records on [State's Exhibit 29] that [Dr. Gruszecki] did not review." Notably, the trial court sustained this objection and ordered the State not to question Gruszecki about medical records she had not reviewed. *See Ramirez v. State*, 973 S.W.2d 388, 392 (Tex. App.—El Paso 1998, no pet.) ("[W]e note that a party cannot request something of the trial court and then complain that the court committed error in granting the relief."). Because Morgan did not object in the trial court based on the grounds he now brings on appeal, and because the trial court granted him the specific relief he requested, he has failed to preserve this issue for our review. *See Lovill*, 319 S.W.3d at 691–92 ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). We overrule Morgan's fifth issue.

### IV. CONCLUSION

Having overruled all five of Morgan's issues on appeal, we affirm the trial court's judgment.

17

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 8, 2020