*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★         ★ ★ ★

# OPINION

No. 04-09-00210-CR

Steve **REYES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-3792
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:         Karen Angelini, Justice
                 Steven C. Hilbig, Justice
                 Marialyn Barnard, Justice

Delivered and Filed: March 17, 2010

AFFIRMED

Steve Reyes was indicted for assault (causing bodily injury) to a member of his family or household.[1] Included in the indictment was an allegation that Reyes was previously convicted of a similar assault, which raised the underlying offense to a third-degree felony.[2] The indictment also included two enhancement paragraphs, each alleging Reyes had a prior felony conviction, which

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2009).

[2] *See id.* at § 22.01(b)(2).

made Reyes eligible for punishment as a habitual offender.[3]  The jury found Reyes guilty of the offense as charged in the indictment and found the enhancement allegations to be true.  The trial court sentenced Reyes to life in prison.  Reyes appeals the judgment, arguing the trial court erred in admitting a 911 recording over his hearsay and confrontation objections.  Reyes also claims the evidence is legally insufficient to support the jury's determination he had a prior conviction for assault against a family member.  We affirm the judgment of the trial court.

## BACKGROUND

On February 23, 2007, Reyes's son called 911 at his mother's request to seek medical help.  According to the 911 recording, the child requested assistance because his father "beat my mom."  The caller expressed concern that his mother's leg may be broken because she was limping and his mother was "all beat up and she can't move."  The child answered the 911 operator's questions as to whether Reyes had been drinking and possessed weapons.

The police were dispatched to the residence where they encountered the complainant Mary Mora.  City of San Antonio police detective Juan Campacos testified he took pictures of Mora at the scene, and the pictures were placed into evidence.  Detective Campacos testified the pictures reflected Mora had two black eyes and cuts over her eyebrows.  Raul Rendon, a San Antonio patrol officer, testified that when he arrived at the residence he saw Reyes coming from a rear bedroom.  He later saw Mora come from one of the back rooms and observed that her face and body were injured.  Officer Rendon testified Mora told him Reyes had beaten her.  Mary Dye, another San Antonio Police officer, testified that when she arrived at the scene she encountered a "fearful" child who said that a disturbance was "going on in the back."  Officer Dye also testified Mora told her that

---

[3] *See id.* at § 12.42(d).

Reyes had beaten her.  At trial, Mora was a recalcitrant witness for the State.  She read excerpts from her handwritten statement made on February 23, 2007, in which she stated Reyes had beaten her.

### ADMISSION OF 911 RECORDING

The audio recording of the 911 call was admitted into evidence over Reyes's objection that the recording was hearsay and violated his right to confront witnesses.  The State argued to the trial court that the recording fell within two exceptions to the hearsay rule – present sense impression and excited utterance.  We review the trial court's decision to admit evidence under an abuse of discretion standard.  *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).  We will uphold the trial judge's decision unless it is outside the zone of reasonable disagreement.  *Id.*  We will also uphold a trial court's ruling admitting evidence "if the ruling is reasonably supported by the record on any theory of law applicable to the case."  *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

#### *Hearsay*

Our rules of evidence contain many exceptions to the general prohibition against the use of hearsay at trial.  The present sense impression exception is defined as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  TEX. R. EVID. 803(1).  The excited utterance exception is defined as a "statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition."  TEX. R. EVID. 803(2).  The Court of Criminal Appeals recently described both exceptions as fitting the category of "unreflective statements."

> The first set of hearsay exceptions, unreflective statements, are "street corner" utterances made by ordinary people before any thoughts of litigation have crystallized.  These unreflective statements used to be called "res gestae," an imprecise Latin legalese term, because the speaker was not thinking about the legal

consequences of his statements. In most instances, the speaker was not thinking at all; the statement was made without any reflection, thought process, or motive to fabricate or exaggerate.

*Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008)(footnotes and citations omitted). The court went on to explain:

The rationale for the [present sense impression] exception is that the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually all danger of insincerity.

\* \* \*

The rule is predicated on the notion that "the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes." It is "instinctive, rather than deliberate." If the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability of the statements and renders them inadmissible under the rule.

*Id*. at 380-81 (footnotes and citations omitted).

Reyes argues the recording was not admissible under the present sense impression exception because the recorded statements recounted past events and fail to meet the contemporaneous or immediacy requirement of the hearsay exception. The 911 recording includes statements by the caller that his mother was "limping" and that she "needs" an ambulance. These statements indicate the caller was describing events as they were happening and falls within the hearsay exception of present sense impression. The caller's statement that his father had beaten his mother also appears to be a description of a past event, although it is not clear from the recording when the event took place. When an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion of the recording is inadmissible. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009). A trial court does not abuse its discretion when it admits the exhibit in its entirety if the objecting party fails to segregate the admissible from the

inadmissible. *See id.* Reyes objected to the entire recording and he did not request specific portions to be excluded. Because at least some statements in the recording appear to be a contemporaneous statement about an event the caller was witnessing, the trial court did not abuse its discretion by admitting the recording.[4] *See id.*

### *Confrontation*

Reyes also argues his right of confrontation under the Sixth Amendment was violated by the admission of the 911 recording because he did not have a prior opportunity to cross-examine the caller, the State did not demonstrate the caller was unavailable to testify, and the recording was testimonial. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). Both parties agree the key to the resolution of this issue is whether the recording is testimonial.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). In *Vinson v. State*, the court of criminal appeals suggested a non-exhaustive list of factors to consider in determining whether the statements were testimonial:

> 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

---

[4] Because we conclude the evidence was admissible under the present sense exception, we need not address the State's alternate theory that it was also admissible under the excited utterance exception.

252 S.W.3d 336, 339 (Tex. Crim. App. 2008)(citing *Davis*, 547 U.S. at 829-30).  We review *de novo* the question of whether a statement is testimonial or nontestimonial.  *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

We agree with the trial court that the statements contained in the 911 recording are not testimonial.  The 911 operator's questions were designed to evaluate the situation at the time the call was received in order to determine if an emergency existed that required a response.  The questions by the 911 operator clearly indicate their primary purpose was to determine the extent of the emergency rather than memorializing information for later use in a criminal prosecution.  The trial court did not abuse its discretion in admitting the 911 recording.

### LEGAL SUFFICIENCY – PRIOR ASSAULT CONVICTION

In two separate issues, Reyes challenges the legal sufficiency of the evidence.[5]  Reyes argues the evidence is legally insufficient to prove his prior assault conviction, and there was a material variance between the allegation in the indictment and the proof at trial as to the date of the previous assault conviction.[6]  Reyes raises legal sufficiency challenges under both federal and state due process grounds.

We review a federal due process challenge to the legal sufficiency of the evidence by determining whether a rational trier of fact could have found the "substantive elements of the offense as defined by state law" beyond a reasonable doubt.  *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 n. 16 (1979)); *see also Prible v. State*,

---

[5] In one point of error, Reyes contends the trial court erred in failing to grant an instructed verdict due to a variance.  In his second point of error, Reyes challenges the legal sufficiency of the evidence for the same reason.  However, a complaint the trial court failed to grant an instructed verdict is a challenge to the sufficiency of the evidence.  *Canales v. State*, 98 S.W.3d 690, 692-93 (Tex. Crim. App.), cert. denied, 540 U.S. 1051 (2003).

[6] The indictment alleged the date of conviction to be July 17, 2000 in cause number 751591.  The certified copy of the judgment placed into evidence was dated June 9, 2000 in the same cause number.

175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005) (stating sufficiency of evidence review requires viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt).

However, when the legal sufficiency of the evidence is challenged under state law, we measure the evidentiary sufficiency against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Fuller*, 73 S.W.3d at 252 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001). Only allegations giving rise to material variance must be included in the hypothetically correct jury charge. *Gollihar*, 46 S.W.3d at 257; *see Fuller*, 73 S.W.3d at 253. We decide if the variance is material by determining "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Gollihar*, 46 S.W.3d at 257 (*quoting U.S. v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)).

### *Prior Assault Conviction – Element of Offense or Mere Enhancement Allegation*

Central to our review is whether the allegation of the prior assault conviction is an element of the offense or merely an allegation for the purpose of enhancement of punishment. A prior conviction alleged for enhancement is "is not really a component element of the primary offense." *Brooks v. State*, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997). Although a defendant is entitled to notice that the State intends to enhance his punishment through the use of prior convictions, enhancement allegations are not required to be pled in an indictment. *Id*. at 34. Thus, if the prior

assault conviction is an enhancement allegation, it is not an element of the offense, and need not be included in a hypothetically correct jury charge for a conviction of the primary offense.

Relying on *Carlton v. State*, Reyes argues the allegation of the prior assault conviction is an element of the offense for which he was charged. 176 S.W.3d 231, 236 (Tex. Crim. App. 2005). In *Carlton,* the court addressed whether the allegation of a prior conviction under the evading arrest statute was an element of the offense. The court explained that when determining "whether any given fact constitutes an element of the offense," the court must look to the plain language of the statute involved and apply that plain language if it is not ambiguous. *Id*. at 233. If the language is ambiguous or would lead to an absurd result, we resort to extra-textual sources to determine the element of the offense. *Id*. The court began its analysis with a review of the text of section 38.04 of the Penal Code which provides in relevant part:

> **§ 38.04 Evading Arrest or Detention**
>
> a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him.
>
> (b) An offense under this section is a Class B misdemeanor, except that the offense is:
>
>> (1) a state jail felony if the actor uses a vehicle while the actor is in flight and the actor has not been previously convicted under this section;
>>
>> (2) a felony of the third degree if:
>>> (A) the actor uses a vehicle while the actor is in flight and the actor has been previously convicted under this section; ...

TEX. PENAL CODE ANN. § 38.04 (Vernon Supp. 2009). The court determined the statute was not ambiguous. The court held that a conviction for the offense evading arrest as an element of a third-

degree felony could not occur without proving the actor has previously been convicted of evading arrest. *Id.* at 234. The court concluded from the plain language of the statute that a prior conviction for evading arrest is an element for the offense of third-degree felony evading arrest. *Id.*

Applying the court's analysis in *Carlton*, we conclude the allegation of the prior assault conviction is also an element of the offense of assault causing bodily injury when pled as a third-degree felony. The structure of section 22.01, which defines the offense of assault causing bodily injury, is similar to that of evading arrest.

**§ 22.01 Assault**

(a) A person commits an offense if the person:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

\* \* \*

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

\* \* \*

> (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:
>
> > (A) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, . . . against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code; . . .

TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2009). Section 22.01(b)(2) is not ambiguous, and the plain language of the statute requires proof of a prior conviction. Accordingly, proof of a prior assault conviction is an element of the offense and must be included in a hypothetically correct

charge and proven beyond a reasonable doubt. We will review the sufficiency of the evidence to determine if the State adduced sufficient proof of this element.

Reyes argues the State failed to prove he had been previously convicted of the requisite assault. We disagree. The State introduced into evidence a certified copy of a judgment dated June 9, 2000 in cause number 751591. The judgment stated Reyes had pled guilty to assault and included an affirmative finding of family violence.[7] A fingerprint expert testified the judgment contained a fingerprint impression made by Reyes. The State's expert testified he compared the fingerprint contained on the judgment with Reyes's fingerprints and concluded Reyes's fingerprint was on the judgment. The judgment also contains the name of Mary Mora, the same complainant in the instant case. Based on this evidence, a reasonable jury could have concluded Reyes had previously been convicted of assault as alleged.

Reyes also contends the **date** of the prior conviction is an element of the offense. We again disagree. A hypothetically correct jury charge includes the statutory elements of the offense. *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 254. Although proof of a prior assault conviction is an element of the offense, the date on which the conviction occurred is not an element of the offense. TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2009); *see Fuller*, 73 S.W.3d at 254 (holding name of victim in injury to elderly case was not element of offense because statute required only proof that an elderly individual was harmed as opposed to the name of the person). Nothing in the language of the statute suggests the date of the prior assault conviction must be proven; it must only be shown to have occurred prior to the present assault. TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2009).

---

[7] Article 42.013, Texas Code of Criminal Procedure, requires the trial court to make a finding of family violence if the offense is contained in Title 5 of the Penal Code and the court determines the offense involved family violence as defined in section 71.005 of the Texas Family Code. TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2006).

The state proved the prior conviction's date was before the current proceeding's commencement, and although the date was incorrect the cause number, victim, and county were correct. The State's failure to prove the date in the indictment does not make the evidence insufficient. *See Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 254.

Reyes also states in a conclusory manner that the variance prevented him from preparing his defense and prejudiced his substantial rights. However, Reyes fails to demonstrate how he was prejudiced nor does he argue he is subject to double jeopardy if the conviction is affirmed. Based on the record, we cannot conclude the variance was material under the standard set forth in *Gollihar*, 46 S.W.3d at 254.

## CONCLUSION

The trial did not err in admitting the 911 recording. The evidence was legally sufficient to support the jury's verdict. The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

PUBLISH