# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2022

Lyle W. Cayce
Clerk

No. 21-50890

Roberto Garcia,

*Plaintiff—Appellee*,

*versus*

Julio Orta, *San Antonio Police Officer, #1079, Individually and in his Official Capacity*; Zachary Sherron,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-1175

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Roberto Garcia alleges that his Fourth Amendment rights were violated because he was detained without probable cause for driving while intoxicated. He brought suit under Section 1983, seeking damages from the officers who submitted an affidavit and incident reports to a magistrate to support his pretrial detention. The defendants moved for summary judgment, asserting the defense of qualified immunity. The district court determined that fact issues precluded summary judgment. On this interlocutory appeal, we REVERSE and RENDER.

No. 21-50890

## FACTUAL AND PROCEDURAL HISTORY

On July 17, 2014, Roberto Garcia was arrested for driving while intoxicated.  He was found sleeping in a parked vehicle in a private driveway to a construction site, which was steps away from a public road.  According to Garcia, a friend was driving the vehicle with Garcia in the passenger seat when the car's engine began to overheat.  After the driver left to seek assistance, Garcia switched to the driver's seat to take a nap.

Officer Zachary Sherron, a police officer with the San Antonio Police Department ("SAPD"), was called to Garcia's location by other officers. According to Sherron, Garcia was asleep behind the wheel of a vehicle with its motor running when officers arrived.  When officers woke Garcia and ordered him out of the vehicle, Garcia allegedly "attempted to pull the vehicle forward."  Sherron reported that he observed the vehicle lunge forward and then abruptly stop a few feet later.  Sherron reported the car was running during "all of this" and another officer had to remove the keys from the ignition to turn off the vehicle.

Garcia disputes some of these factual assertions.  In a deposition, he testified that the keys were in his pocket and denied that the vehicle was running.  He denies the vehicle lunged forward. At most, the vehicle "rolled slightly" due to some other cause, such as his releasing the brakes or from the officers' pounding on the window while the vehicle was in neutral.

Officer Julio Orta, also a police officer with the SAPD, arrived on the scene to determine whether Garcia had been driving while intoxicated.  Orta asked Garcia to exit the vehicle to speak with him.  Orta reported that Garcia smelled of alcohol, had slurred and confused speech, and had red and glassy eyes.  Orta reported that Garcia stated that he had one drink in the morning, though he did not recall when he started or stopped drinking.  After Garcia declined to participate in any field sobriety tests, Orta arrested Garcia.

No. 21-50890

To obtain a search warrant for Garcia's blood and to support his pretrial detention, the officers provided their incident reports and an affidavit to a magistrate. The officers alleged that Garcia "attempted to pull the vehicle forward," that "the vehicle lunge[d] forward and then abruptly c[a]me to a stop a few feet later," and that "[t]he vehicle was on and keys in the ignition." Also, the officers reported that Garcia's vehicle was found in a "public place" on the "2000 block of Zarzamora St." Garcia later alleged that the officers' statements were deliberately false and asserted they were motivated by a previous lawsuit Garcia had filed against another SAPD officer.

Garcia was then taken before a magistrate. As we understand the allegations, the same incident reports and affidavit were introduced at that time. The magistrate set Garcia's bond at $75,000, which Garcia could not afford. He was held in pretrial detention for 505 days, over 16 months, before his case was eventually dismissed. We will explain that the arresting officers did not violate his rights, but this extraordinarily long detention of an arrestee is wretched commentary.

Proceeding *pro se*, Garcia brought suit under 42 U.S.C. § 1983 against Officer Orta, SAPD Chief William McManus, the SAPD, and the City of San Antonio, asserting federal constitutional and related state law claims. The district court agreed with the defendants that a statute of limitations barred Garcia's lawsuit and therefore dismissed the case. On appeal, after the initial briefs were filed, this court appointed *pro bono* counsel. New briefing followed. We then reversed the dismissal of Garcia's claim that he was detained pursuant to wrongful legal process, holding that his claim did not accrue until criminal proceedings ended in his favor. *Garcia v. San Antonio, Tex.*, 784 F.App'x 229, 232–33 (5th Cir. 2019).

After our remand, the district court appointed counsel for Garcia, who filed an amended complaint and added officer Sherron as a defendant.

3

No. 21-50890

Relevant to this appeal, Garcia alleged that his pretrial detention was without probable cause in violation of the Fourth Amendment. He alleged that his detention was "unreasonable" because it was based on false evidence presented to the magistrate, rather than being supported by probable cause.

The defendants moved for summary judgment asserting qualified immunity. The magistrate judge recommended granting defendants Orta's and Sherron's motion for summary judgment, concluding they were entitled to qualified immunity because any allegedly false statements were ultimately immaterial to the criminal court's probable cause finding. The district court disagreed, concluding there was a genuine dispute of material fact whether the officers made false statements that Garcia was "operating a motor vehicle" in violation of Texas law. The defendants timely appealed.

## DISCUSSION

We review the denial of a motion for summary judgment *de novo*. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Since this is an interlocutory appeal of the district court's denial of qualified immunity on summary judgment, our review is generally limited "to the extent that it turns on an issue of law." *Joseph*, 981 F.3d at 331 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "When the district court identifies a factual dispute, as it did here, we consider only whether the district court correctly assessed 'the legal significance' of the facts it 'deemed sufficiently supported for purposes of summary judgment.'" *Id.* (quoting *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019)(en banc)).

Our discussion proceeds as follows. First, we address whether the defendants preserved several legal arguments for appeal. Second, we consider whether we have interlocutory jurisdiction over the defendants'

4

argument that the district court erred by relying on Garcia's version of the facts when they were supposedly contradicted by video evidence of the incident. Third, we address whether, with aspects of Garcia's version of the facts discredited, the defendants are entitled to qualified immunity. Finally, we address Garcia's asserted alternative basis of affirmance.

### I.     Forfeiture

The defendants argued to the district court that the statements they submitted to the magistrate were demonstrably true, relying on the dashcam footage of the incident and expert analysis of that footage. On appeal, they reassert this argument and raise several new arguments that they are entitled to qualified immunity. Except for the argument presented in the district court, Garcia maintains that each of those arguments is forfeited.

Generally, "arguments not raised before the district court are waived and will not be considered on appeal." *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010). "A party must press, not merely intimate, an argument, in order to preserve it for appeal." *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996). "The raising party must present the issue so that it places the opposing party and the court on notice that [the] issue is being raised." *Id.* (citation omitted). The exceptions to this rule include arguments concerning (1) the court's subject matter jurisdiction and (2) "purely legal matter[s] [when] failure to consider the issue will result in a miscarriage of justice." *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) (citation omitted).

The defendants argue that forfeiture does not apply solely because the plaintiff bears the burden to rebut qualified immunity. *See Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Because it was Garcia's burden to identify "specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential

No. 21-50890

elements" of qualified immunity, *see Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016), the defendants contend that they could not have forfeited arguments concerning those essential elements. We disagree. District court judges, as well as judges on this court, depend on the arguments presented by the parties in making decisions, and we will not put the district court in error based on an argument never there presented.

The arguments not presented to the district court are forfeited.[1]

## II.     Interlocutory Appeal Jurisdiction

The only argument preserved by the defendants is that the district court erred in finding a genuine dispute of fact existed concerning whether the officers' statements provided in their incident reports and affidavit regarding Garcia operating his vehicle were true. Garcia argues that we lack interlocutory jurisdiction over this issue because it "implicates" the genuineness of a fact dispute.

The "denial of qualified immunity is immediately appealable under the collateral order doctrine, when based on an issue of law." *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999). This court has "jurisdiction for this interlocutory appeal if it challenges the materiality of factual issues, but [we] lack jurisdiction if it challenges the district court's genuineness ruling — that genuine issues exist concerning material facts." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis removed). As a result, with one exception we discuss later, we do not disturb "the district court's articulation of the genuinely disputed facts when determining

---

[1] The defendants also suggest in their briefing for the first time on appeal that the law was not clearly established at the time of the alleged constitutional violation. This argument is forfeited because, in addition to failing to raise it below, they failed to provide adequate briefing on appeal. *See Calanese Corp.*, 620 F.3d at 531; *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020).

whether these disputes are material to a finding of qualified immunity." *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999).

Here, the district court considered the video, photographs, expert evidence, and testimony from the parties and found a genuine factual dispute about "whether and by what means the vehicle traveled" and whether the vehicle was running with the keys in the ignition when the officers arrived. From that finding, the district court also found a genuine factual dispute about whether the officers' statements that Garcia "attempted to pull the vehicle forward," that the "vehicle lunge[d] forward and then abruptly [came] to a stop a few feet later," and that "[t]he vehicle was on and keys in the ignition" were false. The argument that the district court erred by failing to credit the officers' statements as true considering the video evidence is a challenge to the genuineness of a factual dispute, an argument we typically would lack jurisdiction to consider.

To avoid this conclusion, the defendants argue that the district court erred "by ignoring the objective video evidence that established the veracity of the materials Orta presented to the magistrate and the presence of probable cause for Garcia's detention." In support, the defendants rely on a Supreme Court decision addressing the impact of video evidence. *Scott v. Harris*, 550 U.S. 372 (2007).

In *Scott*, the Supreme Court reversed the denial of summary judgment to defendant police officers based on their assertion of qualified immunity. *Id.* at 376, 386. The district court held that the plaintiff's version of the facts created a genuine dispute of material fact. *Id.* at 376. The plaintiff had been involved in a high-speed vehicle chase and was pushed off the road by the chasing police officer; the plaintiff alleged a set of facts greatly downplaying the dangerousness of his efforts to elude officers, thereby creating a basis to argue excessive force was used. *Id.* at 375, 379–80. Despite the usual rule

that courts should adopt the plaintiff's version of the facts when the defendant moves for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 378, 380. A court "should not . . . rel[y] on such visible fiction" and should "view[] the facts in the light depicted by the videotape." *Id.* at 380–81. The "record" in *Scott* that created the blatant contradiction was the video of the chase. *Id.* a 378.

After *Scott*, we have held that a court of appeals may consider, on interlocutory appeal, still photographs and video evidence to evaluate whether the district court erred by relying on the plaintiff's version of the facts. *Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015). The standard we apply is whether the record evidence "blatantly contradict[s]" or "utterly discredit[s]" the nonmoving party's version of the facts. *See id.* at 664 (quoting *Scott*, 550 U.S. at 380–81).[2] Among our precedents are some that rely on what can be heard, and not just what can be seen, on a video. *See, e.g., Rich v. Palko*, 920 F.3d 288, 295 (5th Cir. 2019).

According to Garcia, when the officers arrived, he was sleeping in the driver's seat; the vehicle's motor was off and the ignition key was in his pocket. He denies that he attempted to pull forward or that the vehicle

---

[2] In *Scott*, the Court relied upon bodycam video footage, which discredited the plaintiff's version of the facts. 550 U.S. at 380. The *Scott* opinion does not limit its holding to video evidence, instead referring to "the record." *See id.* Courts have applied this holding using other types of evidence capable of utterly discrediting the plaintiff's version of the facts. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (video and audio from dashcam); *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) (taser log); *Curran*, 800 F.3d at 663–64 (still photos); *Coble v. City of White House*, 634 F.3d 865, 868–69 (6th Cir. 2011) (audio from dashcam footage).

lunged forward, though he concedes that the vehicle may have "rolled forward slightly" due to some unexplained cause. Does the dashcam footage and photographic evidence utterly discredit these statements?

The video shows Garcia's vehicle parked in a driveway, feet away from a public road, with two officers near the driver's side door. The taillights on Garcia's vehicle are on. As Sherron approaches the vehicle, the vehicle moves forward, away from the camera, causing Sherron to turn back toward his vehicle. The brake lights come on almost immediately after the forward movement.[3] We perceive no dispute that the vehicle moved at least six inches and maybe further. Officers can then be heard ordering Garcia to turn off the vehicle. The video shows the brake lights remain on for several seconds, then turn off, then turn back on again until Garcia gets out of the vehicle.

We conclude it to be undisputable from the video and photographic evidence that the vehicle moved forward with Garcia behind the wheel. He must have put his foot on the brakes just after the vehicle began its forward motion because that is when the brake lights came on.

A different issue arises from the fact that on the audio recording, more than one officer can be heard ordering Garcia to turn off the vehicle. Accepting as indisputably accurate the recorded oral statements about what someone stated that he perceived (the vehicle's motor was on) is different in kind and not just degree from accepting as accurate what we can see ourselves

---

[3] Still photos from the video, provided by the defendants' expert, confirm that the vehicle moved forward and the brake lights engaged almost immediately after the vehicle started moving. The still photos, which were time stamped two seconds apart from each other, show the vehicle before and after it moved forward. The expert analysis also confirms that the vehicle moved relative to the ground, excluding the possibility the police car in the frame moved.

on a video. The statements likely would be admissible under some exception to the hearsay rules. The issue, though, is how these statements fit within the *Scott v. Harris* principles about blatant contradictions. One standard from *Scott* is whether, because of the audio, "no reasonable jury could believe" Garcia's version that the motor was off and the key to the ignition was in his pocket. *See Scott*, 550 U.S. at 380–81. All we need to hold today, and we do, is that the recorded oral assertions that the vehicle's motor was on may not by themselves be enough to discredit Garcia's statements, but they can be considered in deciding whether other evidence sufficiently contradicts.

With these facts in hand, we examine whether qualified immunity should have been granted.

### III.    *Qualified Immunity*

Qualified immunity protects public officials acting in their individual capacity from lawsuits and liability for damages under Section 1983 unless their conduct violates a clearly established constitutional right. *See Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). To overcome an asserted qualified immunity defense, the plaintiff must show "sufficient facts to 'make out a violation of a constitutional right'" and "'the right at issue was "clearly established" at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The Fourth Amendment protects against unreasonable searches and seizures. This includes the "constitutional right . . . to be free from police arrest [and searches] without a good faith showing of probable cause" based on "deliberate or reckless false statements." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (citation omitted). It is "clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly

false statement is necessary to the finding of probable cause.'" *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). To determine if an allegedly false statement is "necessary to the finding of probable cause," the court must consider the affidavit as if those false statements were removed and consider whether the "remaining content" would still support a probable cause finding. *See Franks*, 438 U.S. at 156. That standard also means that qualified immunity applies if the corrected affidavit would have supported a reasonable officer's belief that probable cause existed. *See Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

After the incident, Garcia was charged with and detained for the offense of driving while intoxicated, which is committed "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). Garcia alleges that the officers violated his Fourth Amendment rights because the officers knowingly made materially false statements to the magistrate that he was "operating a motor vehicle" and "in a public place." We will analyze each assertion.

### a.  *Whether Garcia was operating a motor vehicle*

We start with Garcia's contention that the officers' allegedly false statements were material to the magistrate's finding of probable cause that Garcia operated the vehicle. Section 49.04 does not define "operate." *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App. — Dallas 1994, no pet.). The Texas Court of Criminal Appeals has defined the statute as not being dependent on whether a person caused a vehicle to move:

> We do not accept the contention that to operate a vehicle within the meaning of the statute, the driver's personal effort must cause the automobile to either move or not move. Purposely causing or restraining actual movement is not the only definition of "operating" a motor vehicle. In other words, we examine the totality of the circumstances to determine if

[the defendant] exerted personal effort upon his vehicle for its intended purpose.

*Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (en banc) (brackets in original) (quoting *Barton*, 882 S.W.2d at 459).

The inquiry, then, is whether, under "the totality of the circumstances[,] . . . the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Id.* (citation omitted). Texas courts have upheld convictions for driving while intoxicated when the driver was found asleep behind the wheel of an idling vehicle, even though the car did not move. *See Dornbusch v. State*, 262 S.W.3d 432, 433–34 (Tex. App. — Fort Worth 2008, no pet.). Another court held that the defendant's "application of the brake pedal, thereby restraining the vehicle's actual movement, falls within the definition of 'operating a motor vehicle.'" *Partee v. Tex. Dep't of Pub. Safety*, 249 S.W.3d 495, 499 (Tex. App. — Amarillo 2007, no pet.).

Our earlier summary showed that the video removed any doubt that Garcia was in the driver's seat, the vehicle moved forward at least six inches, and the brakes stopped the car. To the extent Garcia argues the movement was too small to be unequivocal evidence that the motor was on and the car was in gear, and that perhaps something else caused the vehicle to move, we add to the mix the recorded commands from officers for Garcia to turn the motor off. There is only so much we can place within the range of decisions by reasonable jurors. With the rest of this evidence, no reasonable juror would reject each officer's contemporaneous reference to the motor's being on. The vehicle moved, with Garcia in the driver's seat and the motor on. He operated the motor vehicle.

As to whether there were any false statements in the affidavit, all we see is a question about how far the vehicle moved. An affidavit asserting it

moved at least six inches would still have supported a reasonable officer's belief that Garcia was operating the vehicle. The district court should have adopted the version of the facts revealed by the evidence we have discussed.

### b. *Whether Garcia was in a public place*

Garcia also argues that regardless of whether he was operating a motor vehicle while intoxicated, he was not doing so in a public place. The district court rejected this argument.

According to Texas Penal Code Section 1.07(a)(40), a public place is "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." Texas courts interpret this provision as providing for a broad definition of a public place. *State v. Gerstenkorn*, 239 S.W.3d 357, 358–59 (Tex. App. — San Antonio 2007, no pet.). Courts are given a degree of "discretion" to inquire "whether the public has access to the place." *See id.*

The district court found there was no genuine factual dispute regarding whether the vehicle was located on a publicly accessible driveway on the "2000 block of Zarzamora St," which was properly characterized as a public place. We agree. The dashcam footage shows the vehicle was just off the roadway on a driveway to a construction site, feet away from the road. There were no visible signs warning the public not to enter the driveway nor any indication that access to the driveway was off-limits to members of the public. Thus, the district court did not err by concluding that the private driveway was properly characterized as a "public place" under Texas law. *See id.* at 359.

We REVERSE and RENDER judgment for the defendants.