

## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| AUSTIN WILSON BRADFORD, | § | No. 08-24-00028-CR |
| Appellant, | § | Appeal from the |
| v. | § | 399th District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2019CR8872) |

## <u>MEMORANDUM OPINION</u>

### INTRODUCTION

Austin Wilson Bradford, Appellant, was convicted of felony driving while intoxicated and sentenced to 16 years. Tex. Penal Code Ann. § 49.09(b)(1).[1] He appeals his conviction, arguing errors due to a typographical error in the indictment, the limitation of voir dire, and sufficiency of the evidence. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, at approximately 4:00 a.m., Appellant was found alone in the driver's seat of his truck, stuck in a grassy area in a residential neighborhood. It appeared to the officer that

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Appellant was intoxicated because his speech was slurred, he could not follow instructions, had unsteady balance, smelled of alcohol, and there was vomit on the side of the truck. Based on these facts, the officer arrested Appellant for driving while intoxicated.[2] Appellant did not consent to a blood test, but the officer obtained a warrant and Appellant's blood was drawn for analysis a couple of hours later.

Appellant was indicted for driving while intoxicated. The indictment also alleged that on August 2, 2004, Appellant was convicted of intoxication manslaughter in two separate cases. At trial, the State offered the testimony of the arresting officer and a video taken from the officer's body camera, a toxicologist who found that Appellant's blood alcohol concentration was 0.155,[3] and a fingerprint examiner for the Bexar County Sheriff's Department who testified that Appellant was previously convicted of intoxication manslaughter on August 20, 2004. Appellant called his father as a witness, and he testified that Appellant's behavior on the body camera video was consistent with his inquisitive nature and that he did not appear intoxicated. He also testified that Appellant has hypoglycemia which can cause him to experience nausea and dizziness "even to the point of blacking out."

The jury found Appellant guilty of felony driving while intoxicated and the court sentenced him to 16 years. Appellant raises six issues on appeal. In Issue One, he argues that the trial court erred by limiting his voir dire to 35 minutes. Issues Two, Three, Five, and Six relate to the variance between the indictment's recital and the proof at trial of the date of the prior conviction. In Issue Four, Appellant argues that the trial court erred in denying his motion for directed verdict because

---

[2] The officer testified that he did not conduct any field sobriety tests because Appellant was not able to follow even simple directions.

[3] A blood alcohol concentration of 0.08 meets the legal definition of "intoxicated." Tex. Penal Code Ann. § 49.01(2)(B).

the State did not establish with legally sufficient evidence that Appellant operated a vehicle in a "public place."

## II. ANALYSIS

### A. Time limitation of voir dire – Issue One

At the beginning of voir dire, the trial court discussed a few general topics with the venire panel: the fact that the indictment is not evidence, the State's burden of proof, Appellant's right not to testify, and the fact that trial is divided into the guilt/innocence and punishment phases. The trial court also introduced the attorneys and announced the names of the witnesses and asked the panel if anyone knew them. The trial court then gave each side 35 minutes to conduct voir dire. With his allotted time, Appellant's attorney discussed the elements the State must prove to convict for DWI, the burden of proof, and the jury's duty to use common sense to evaluate evidence. He also probed for biases, specifically by asking whether panel members believed that it should be illegal to drink *any* amount while driving and whether they would presume Appellant's guilt because of his prior intoxication manslaughter convictions. Finally, he asked the panel if there was anyone that would not be able to serve on the jury for any reason, such as scheduling conflicts.

After the State and Appellant agreed to strike 36 potential jurors, but before each side exercised their peremptory strikes, Appellant's attorney stated,

> Your honor was kind enough to give us the 35 minutes. I had requested additional time that was not granted, which I understand, respect the Court's ruling. I would like to put as Defense Exhibit No. 1 my [PowerPoint] voir dire of those issues representing what I was not able to cover today in the case that in the unlikely event that I lose this case and it goes up on appeal.[4]

---

[4] The initial request for additional time that Appellant refers to is not included in the record before us, but the State does not dispute that it was made.

3

The trial court made no response and, after a recess (during which the parties apparently exercised their peremptory strikes), seated the jury. Appellant claims that the time limitation on voir dire violated his rights.

"The constitutionally guaranteed right to counsel encompasses the right to question prospective jurors in order to intelligently and effectually exercise peremptory challenges and challenges for cause during the jury selection process." *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990) (en banc). But voir dire does not continue until the attorney runs out of questions. Indeed, a "skilled lawyer can always find more questions that are proper to ask prospective jurors."[5] *Whitaker v. State*, 653 S.W.2d 781, 782 (Tex. Crim. App. 1983) (en banc). The right to question a venire panel is balanced with the trial court's right to control voir dire "in the interest of conducting an orderly and expeditious trial." *Ex parte McKay*, 819 S.W.2d at 482.

We review time limitations of voir dire for an abuse of discretion. *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992) (en banc). We analyze three factors in determining whether the trial court abused its discretion: "(1) whether the defendant's voir dire examination reveals an attempt to prolong the voir dire . . .[;] (2) whether the questions that the defendant was not permitted to ask members of the venire were proper voir dire questions"; and (3) whether the defendant "was not permitted to examine jurors who served on the jury." *Ratliff v. State*, 690 S.W.2d 597, 599–600 (Tex. Crim. App. 1985) (en banc). The second factor requires that a

---

[5] As Justice Cochran noted in a dissent:

> All proper questions are permissible, but some proper questions are more important than others. Not all proper voir dire questions can ever be asked in any voir dire proceeding or the panel will sit on its hard wooden bench until the clock strikes thirteen. The mind of a well-trained legal advocate is a fertile field-presumably any one of them could devise a list of a hundred or more "proper" questions for any trial if he were so motivated. As in all of life, however, advocates prioritize.

*Rios v. State*, 122 S.W.3d 194, 201 (Tex. Crim. App. 2003) (en banc) (Cochran, J., dissenting) (internal citations omitted).

defendant preserve error by showing what specific questions he would ask, if given additional time. *Clemments v. State*, 940 S.W.2d 207, 209 (Tex. App.—San Antonio 1996, pet. ref'd) ("it is essential that the record reflect what questions the complaining party was prevented from asking); *see also S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding that the appellant did not preserve error because "[r]ather than propound specific questions that he wished to ask, appellant merely identified general topics for potential questions"); *Yanez v. Hernandez*, 632 S.W.3d 64, 74 (Tex. App.—El Paso 2020, no pet.) ("Without knowing specifically what questions Appellant intended to ask the venire members, we cannot adequately assess whether they would be relevant to determining the proclivities of potential jurors which could subject them from being stricken."); *Godine v. State*, 874 S.W.2d 197, 200–01 (Tex. App.—Houston [14th Dist.] 1994, no pet.) ("A trial court should not be expected to separate the wheat from the chaff, cull out potentially valid subject matters from overly broad topic descriptions, and anticipate the form in which a specific question emanating from a topic will be asked.").

Simply offering the PowerPoint presentation as an exhibit does not meet the requirement of specifying the questions that the attorney believes are necessary. For example, in *Latta v. State*, the appellant requested additional time for voir dire and offered, as a bill of proof, the thumb drive of the slides he intended to use during voir dire. *Latta v. State*, No. 07-20-00184-CR, 2021 WL 4101077, at *6 (Tex. App.—Amarillo Sept. 9, 2021, pet. ref'd) (mem. op., not designated for publication). The Amarillo court of appeals held that providing the slides to the trial court did not preserve error and that, "[t]o perfect his bill of proof, counsel should have read each of the desired questions into the record before the court but [] did not do so." *Id*. at *7.

In this case, like in *Latta*, Appellant used slides to guide his voir dire discussion with the jurors and he gave the presentation—all 131 slides—to the trial court as evidence of the "issues"

5

that he was "not able to cover." He did not read into the record or indicate in any way what questions he believed were necessary to ask to enable him to make informed peremptory strikes.

Because Appellant did not preserve his complaint that he was not provided additional time for voir dire, we overrule his first issue.

## B.    Variance between indictment and proof—Issues Two, Three, Five, and Six

Driving while intoxicated is elevated from a misdemeanor to a third-degree felony if the defendant has previously been convicted of intoxication manslaughter or has two previous convictions for driving while intoxicated. [6] Tex. Penal Code Ann. § 49.09(b). In those circumstances, the prior conviction is a jurisdictional element of the offense and must be alleged in the indictment and proved. *Oliva v. State*, 548 S.W.3d 518, 519 (Tex. Crim. App. 2018); *Ex parte Benson*, 459 S.W.3d 67, 75 (Tex. Crim. App. 2015).

The indictment in this case alleged that on August 2, 2004, Appellant was convicted of intoxication manslaughter in two cases.[7] The indictment alleged one of the convictions as a jurisdictional element of a felony DWI and the other conviction to enhance punishment. Tex. Penal Code Ann. §§ 12.42(a); 49.09(b)(1). The convictions, though, were actually on August 20, 2004. At trial, the trial court admitted, over Appellant's objection, the judgment of conviction that established that the convictions were on August 20, 2004, and not August 2, 2004, as alleged in the indictment. The jury charge also included the correct date of the prior conviction. It instructed the jury to find Appellant guilty if, in addition to finding that Appellant "operate[d] a motor vehicle in a public place while intoxicated," it found that:

---

[6] Not relevant to this appeal, the offense is also a felony if the defendant caused serious bodily injury or death to certain public officials. Tex. Penal Code Ann. § 49.09(b-1), (b-2).

[7] The two prior convictions in this case arose from the same incident but were for two different victims.

[P]rior to the commission of the aforesaid alleged offense, on the 20th day of August, 2004, in cause number 2002CR8288 in the 186th District Court of Bexar County, Texas, [Appellant] was convicted of the offense of intoxication manslaughter under 49.08 Texas Penal Code, as alleged in the indictment[.]

Appellant urges four issues related to the typographical error in the indictment. He does not dispute that he was previously convicted of intoxicated manslaughter; rather, he argues that 1) the evidence of an August 20, 2004, conviction was irrelevant and prejudicial; 2) he was entitled to a directed verdict or judgment of acquittal because the State did not prove he was convicted on August 2, 2004; 3) the jury charge with the correct prior conviction date effectively and improperly amended the indictment; and 4) the jury charge was not authorized by the indictment.[8] Each of these arguments is premised on Appellant's contention that the State is bound to prove exactly what it alleged, and therefore had to prove that Appellant was convicted of intoxication manslaughter on August 2, 2004, not August 20, 2004, or any other date. We first examine that underlying premise.

Variances are differences between the allegations in the indictment and proof offered at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). As the Court of Criminal Appeals succinctly put it: "Variances are mistakes of one sort or another. Sometimes they make no difference at all, sometimes they make all the difference." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011), holding modified by *Lang v. State*, 664 S.W.3d 155 (Tex. Crim. App. 2022).

The Court of Criminal Appeals has recognized two types of variances. *Johnson v. State*, 364 S.W.3d 292, 294–95 (Tex. Crim. App. 2012). The first is statutory and occurs when a statute provides that an offense can be committed by various methods and the method alleged in the

---

[8] Although the indictment alleged the incorrect date for both intoxication manslaughter convictions, Appellant's arguments are based only on the conviction used to enhance his offense to a felony.

7

indictment is different from the method proved. As an example, the *Johnson* Court pointed to the retaliation statute which makes it a crime to threaten specific types of people. *Id.* at 294; Tex. Penal Code Ann. § 36.06(a)(1)(A) (making it an offense to harm or threaten people because of their status as a "public servant, witness, prospective witness, or informant"). If the State alleges in an indictment that retaliation was committed by threatening a *witness*, the State's proof of an alternate method—threating an *informant*—is not sufficient. *Id.* (citing *Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011)). The "failure to prove the statutory language pled" is a material variance. *Id.* at 294–95.

The second type of variance occurs when the State pleads a *non-statutory* allegation that is only descriptive of the offense. *Id.* at 294. Again, the *Johnson* Court provided examples of this type of variance: when the indictment alleges a name of a victim or a weapon used but at trial, proves a different victim or weapon. *Id.* at 294. For non-statutory allegations, "[w]e tolerate 'little mistakes' that do not prejudice the defendant's substantial rights but we will not tolerate a variance that really amounts to a failure to prove the offense alleged." *Johnson*, 364 S.W.3d at 295 (quoting *Byrd*, 336 S.W.3d at 246–248); *Gollihar*, 46 S.W.3d at 247–48 ("a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial").

Appellant essentially argues that the prior conviction is a statutory allegation, and therefore the variance is material and fatal. Section 49.09 provides, "An offense under Section 49.04 [Driving While Intoxicated] . . . is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted . . . one time of an offense under Section 49.08 [Intoxication Manslaughter] . . . ." Tex. Penal Code Ann. § 49.09(b)(1). A prior conviction is an element of the offense and therefore a statutory allegation. But the date of the conviction is non-statutory and only descriptive of the offense. *Reyes v. State*, 314 S.W.3d 74, 82 (Tex. App.—

8

San Antonio 2010, no pet.) ("Although proof of a prior assault conviction is an element of the offense, the date on which the conviction occurred is not an element of the offense."). The question, then, is whether the variance is one that prejudiced Appellant's substantial rights.

We determine whether a variance affects a defendant's substantial rights by asking "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Gollihar*, 46 S.W.3d at 257 (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000); *see also Selvage v. State*, 737 S.W.2d 128, 129–30 (Tex. App.—San Antonio 1987, pet. ref'd) ("the object of the doctrine of variance between allegation of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice.") (internal citations omitted). Appellant does not assert that he was at risk of double jeopardy because of the error in the indictment, only that he was prejudiced and surprised by the variance.[9]

Did the indictment in this case—despite the incorrect date of the intoxication manslaughter conviction—sufficiently inform Appellant of the charges and allow him to prepare a defense? It bears repeating that Appellant does not dispute that he was convicted for intoxication manslaughter. He does not argue that he did not know about the conviction or that the State sought to prove it; he argues only that the State should not have been *allowed* to prove it because the indictment alleges that they occurred on an incorrect date. Appellant makes only a conclusory

---

[9] Because the variance pertains to a prior intoxication manslaughter conviction, used to enhance the current offense, Appellant is not at risk of being prosecuted again for that same crime. *Rogers v. State*, 200 S.W.3d 233, 237 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Mims v. State*, No. 06-09-00160-CR, 2010 WL 780176, at *4 (Tex. App.—Texarkana Mar. 9, 2010, no pet.) (mem. op., not designated for publication).

9

statement on appeal that he was "legally surprised," but he has not explained, either at trial or on appeal, how he was surprised. "[T]he burden of demonstrating surprise or prejudice rests with the defendant." *Santana v. State*, 59 S.W.3d 187, 194 (Tex.Crim. App. 2001). Conclusory statements of surprise are not sufficient. *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. [Panel Op.] 1981) ("Despite appellant's general contention that the variance misled him and prejudiced the preparation of his defense, we are unable to say that he has shown such surprise or prejudice as to make it a fatal variance."); *Gollihar*, 46 S.W.3d at 258 (holding that a variance in the serial number of a stolen item was not material because "[t]here is no indication in the record that appellant did not know what cart the State was claiming he stole or that appellant was misled by the allegation or surprised by the proof at trial"). *Reyes*, 314 S.W.3d at 82 ("Reyes also states in a conclusory manner that the variance prevented him from preparing his defense and prejudiced his substantial rights. However, Reyes fails to demonstrate how he was prejudiced nor does he argue he is subject to double jeopardy if the conviction is affirmed.").

Here, the indictment correctly identified the name of the charge, the cause number, the court, the County, and the month and year of conviction. The only error was in the day of the conviction. Moreover, the State provided written notice to Appellant more than a year before trial that it intended to introduce evidence that Appellant was convicted on August 20, 2004, (the correct date) for two counts of intoxication manslaughter. All this information identified the prior conviction the State sought to prove. *Cf. Freda v. State*, 704 S.W.2d 41, 43 (Tex. Crim. App. 1986) (en banc) (affirming the judgment despite a variance because all information about the prior offense was correct except for the name of the offense); *Cole*, 611 S.W.2d at 82 (holding that a variance in the cause number of a prior offense was not fatal when the other information in the indictment was correct.).

10

Courts have consistently held that variances involving the dates of prior convictions do not affect a defendant's substantial rights and are not material. *See, e.g.*, *Thompson v. State*, 563 S.W.2d 247, 251 (Tex. Crim. App. [Panel Op.] 1978) (holding that variance in the date of prior conviction was not fatal); *Selvage*, 737 S.W.2d at 129–30 (same); *Benton v. State*, 770 S.W.2d 946, 948 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (same). This is true even when the prior conviction is alleged not to enhance punishment, but like in this case, as a jurisdictional element increasing the offense from a misdemeanor to a felony. *Reyes*, 314 S.W.3d at 81 (holding that a variance in the date of a final conviction was immaterial when the final conviction was an element of the offense of felony assault); *Valenti v. State*, 49 S.W.3d 594, 598–99 (Tex. App.—Fort Worth 2001, no pet.) (holding in a felony DWI case that the indictment's "typographical error in the date" of the prior DWI conviction was not material.). Because Appellant had notice of the prior convictions the State sought to prove, the variance was not material.

We turn now to Appellant's issues on appeal. Appellant argues that the evidence of the August 20, 2004, conviction was irrelevant and prejudicial. Since the variance was immaterial, any evidence that Appellant was previously convicted of intoxication manslaughter was relevant. Tex. R. Evid. 401. (Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). Nor is the evidence prejudicial. The August 20, 2004, conviction was direct evidence establishing an element the State was required to prove—that Appellant has a prior intoxication manslaughter conviction. There was no risk that the evidence created a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. We overrule Appellant's Issue Two.

11

Appellant argues that the trial court erred in denying his motions for directed verdict and judgment of acquittal because the State failed to prove he was convicted on August 2, 2004, as alleged. This challenge "is in actuality a challenge to the sufficiency of the evidence to support the conviction." *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (en banc) (quoting *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) (en banc)). In reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar*, 46 S.W.3d at 257. The State was required to prove a prior conviction for intoxication manslaughter. Because the variance was immaterial, the State was not required to prove that the conviction was on August 2, 2004, as alleged in the indictment. The evidence of a prior conviction on August 20, 2004, was sufficient to enable a "rational trier of fact" to find the essential element of a prior intoxication manslaughter conviction. We overrule Appellant's Issue Three.

Appellant's fifth and sixth issues challenge the jury charge because it did not track the language of the indictment, but instead instructed the jury to determine whether Appellant had been convicted of intoxication manslaughter "on the 20th day of August, 2004 . . . as alleged in the indictment." A correct jury charge, although it must be "authorized by the indictment," *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc), can disregard "[a]llegations giving rise to immaterial variances[.]" *Gollihar*, 46 S.W. 3d at 257. The jury charge in this case, because it contained the correct date of the prior conviction, did not track the language of the

indictment. However, because that variance was not material, it could be disregarded in the jury charge. We overrule Appellant's Issues Five and Six.

### C. Public place—Issue Four

A conviction for driving while intoxicated requires proof that the defendant was operating his vehicle in a "public place." Tex. Penal Code Ann. § 49.04(a). Appellant argues the trial court erred by denying his motion for directed verdict and judgment of acquittal without proving the "public place" element of the offense. As explained above, this challenge is one to the sufficiency of the evidence.

Appellant argues that the State "produced no evidence that the land in question was deeded to or otherwise owned by a municipality or Bexar County." He further proposes that "the State could have met the burden of proof and called someone from the utility district, the city planning and zoning department or even a clerk from the real property records to show the plat to the property evidencing the public nature of the property." To qualify as a public place, however, there is no requirement that the property be *owned* by a governmental entity. Rather, the determining factor is whether the public has *access* to the property. Tex. Penal Code Ann. § 1.07(a)(40) (defining "public place" as "any place to which the public or a substantial group of the public has access . . .). The Penal Code's definition of "public place" is broad and includes as examples places that are not owned by governmental entities. *Id.* (public place "includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."); *State v. Gerstenkorn*, 239 S.W.3d 357, 358–59 (Tex. App.—San Antonio 2007, no pet.) (the definition is "cast in broad language"). Therefore, the State was not required to prove government ownership, but only public access, to prove the "public place" element of the crime.

The arresting officer testified that when he arrived, Appellant's truck was "stuck in between like a ditch area between two cul-de-sacs. He further explained, "It was off a paved road. There's -- I guess the best way I can describe it, there was two dead ends that go into what's either a greenbelt or like a water run-off area and [the truck] went off the paved road and got stuck in the ditch." The State also provided the video taken from the officer's body camera. In the video, although dark, nearby houses can be seen, and Appellant's truck appears to be within a few yards of the road.

In his reply brief, Appellant argues that the public access to the area ended where the paved road ended and that "large rocks and other obstructions [] prevented its access or use by the public[.]" This confuses the question of whether the public is supposed to *drive* on the property with whether there is public access. Because the State produced evidence that the area where Appellant eventually became stuck was a ditch-type area in a neighborhood, a rational juror could find that he was in a public place. *Partee v. Texas Dep't of Pub. Safety*, 249 S.W.3d 495, 497 (Tex. App.—Amarillo 2007, no pet.) (driver arrested when found in his vehicle "off the roadway between the shoulder and the bottom of a ditch.") *McCann v. State*, 433 S.W.3d 642, 646–47 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (affirming conviction when crashed vehicle was found in the median); *Garcia v. Orta*, 47 F.4th 343, 353 (5th Cir. 2022) (driveway to a construction site was a public place when there were "no visible signs warning the public not to enter the driveway").[10] We overrule Appellant's Issue Four.

---

[10] Although not addressed by either party, even if the public was not allowed in the grassy area, the jury could reasonably have inferred from the evidence that Appellant had operated his truck on the street (and therefore, in a public place) before driving off the street and becoming stuck in the grassy ditch area. Tex. Penal Code Ann. § 1.07 (40) (including streets in the definition of "public place"); *Kinnett v. State*, 623 S.W.3d 876, 899 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (holding that based on circumstantial evidence, "a reasonable jury could conclude that appellant had been operating the vehicle in a public place"). Requiring the State to prove not just that a defendant drove intoxicated in a public place but was also *found* in a public place would result in a situation in which someone cannot be convicted of driving while intoxicated if they were so intoxicated that they drove off the road. *Cf. Gowans*

## III.  CONCLUSION

Appellant failed to preserve any error regarding the trial court's limitation of his voir dire to 35 minutes. Further, the variance between the allegations in the indictment and the proof at trial was not material. Appellant's conviction is supported by sufficient evidence of each element of felony driving while intoxicated. We affirm the trial court's judgment.

MARIA SALAS MENDOZA, Chief Justice

February 3, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

*v. State*, 995 S.W.2d 787, 791 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) ("The appellant's interpretation of Section 49.08 would lead to an absurd result, such that an intoxicated person could drive in a public place, veer off onto private property, and kill someone without being convicted of intoxication manslaughter.").